IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARISSA BUXTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-1212-P |
| | § | |
| LOWE'S HOME CENTER, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment, filed May 16, 2006. The Plaintiffs filed their Response June 5, 2006, along with their Motion to Strike Evidence. Defendants replied June 21, 2006. For the reasons stated below, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment;[1] DENIES Plaintiff's Motion to Strike Evidence;[2] and DENIES Plaintiff's Motion to Strike Defendant's Summary Judgment Reply.[3]

---

[1] "Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id*. at 379. Here, Plaintiff presents no evidence that she exhausted her administrative remedies before filing the instant suit. Nevertheless, Defendant failed to raise this issue, and therefore the court will decide the motion on its merits.

[2] The Court, in making its decision in this case, relies upon none of the evidence Plaintiff moves to strike. Therefore, Plaintiff's Motion to Strike Evidence is DENIED.

[3] The Court admonishes Defendant to use the Court Clerk's time stamp when calculating filing deadlines.

**Memorandum Opinion and Order**
**No. 3:05-CV-1212-P**
**Page 1 of 11**

# I. BACKGROUND

The Defendant, Lowe's Home Center, Inc. (hereinafter "Lowe's") files this Motion for Summary Judgment in response to a complaint filed by the Plaintiff, Charissa Buxton (hereinafter "Buxton"), who alleges the following Title VII violations: (1) Lowe's failed to take prompt, immediate action to stop it her co-worker from sexually harassing her; and (2) her employment at Lowe's was terminated in retaliation for her reporting the harassment to her supervisors.

## A. Buxton's Employment History at Lowe's

Buxton was hired by Lowe's store #525 on May 24, 2000 in Fort Worth, Texas as a Cashier and promoted in March 2002 to Customer Service Associate. (Def.'s Mot. 1, Pl.'s Resp. 3.)  She transferred to Lowe's store #1780 in Dallas in March 2004 and was promoted to Sales Specialist in August 2004. (Pl.'s Resp. 3.)  Buxton remained in that position at Store #1780 until Lowe's terminated her employment December 31, 2004. ( Pl.'s Resp. 6.)

## B. Lowe's Sexual Harassment Policies

Lowe's Human Resources Management Guide outlines the company's policies in regards to sexual harassment, which it defines as "unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature." (Def.'s App. 143.) The policy summary also deems those behaviors unlawful if "such conduct creates an intimidating, hostile or offensive working environment." (Def.'s App. 143.)  Buxton signed a form verifying that she had read the Employee Orientation Guide and understood it's policies.  On the form, Buxton initialed the following section, indicating that she had read and understood Lowe's policy:

> If you are subjected to discrimination, including sexual harassment,
> or if you are aware of a violation of any of the policies above, report

>it immediately to your store/location manager. . . . If immediate satisfactory action is not taken, call or write Lowe's internal audit department. . . . (Def.'s App. 63.)

**C. Facts Surrounding Buxton's Sexual Harassment**

Buxton alleges that her co-worker, Callé Booker, began sexually harassing her in July 2004. In that month, Booker grabbed Buxton's breast on one occasion, and made a sexually-inappropriate remark to her. (Pl.'s Resp. 12, 14)

Buxton contends that Booker did not make any more unwelcome advances toward her until September 2004, when Booker passed behind Buxton, slapped her on the buttocks, and said "get to work." (Pl.'s Resp. 22–23.) Buxton holds that the occurrences of similar activity – slapping on the buttocks and inappropriate remarks – became more frequent in October and November. (Pl.'s Resp. 4.) Buxton contends that on several occasions she asked or told Booker to stop, but Booker only answered by mocking her. (Pl.'s Resp. 11.)

In mid-November, Buxton told her boyfriend, Everton Sean Cox, about Booker's behavior toward her. (Def.'s Mot. 2.) Cox, in turn, approached Buxton's manager, Demarcus Watkins, to ask when Booker was scheduled to work, and reportedly told him that Booker was "trying to affect his home life." (Def.'s Mot. at 2.) Buxton finally made a formal report of the incidents on Saturday, November 27, 2004, to Watkins, who referred her to Store # 1780's Human Resources Manager, with whom Buxton wrote and signed a statement. (Pl.'s Resp. 4.) When she finished the statement, Lowe's management told Buxton that they would investigate her complaint. (Pl.'s Resp. 4.)

On Monday, November 29, 2004, Lowe's Area Human Resources Manager Nona Cardell came to Store #1780, where she, along with Store #1780's Store Manager, Katie Kerbow, continued

the investigation by interviewing Buxton and Booker. (Pl.'s App. 94.) While he did not admit to touching Buxton, Booker did admit to engaging in some inappropriate behavior that violated company policy. (Pl.'s App. 94.) In response, Kerbow disciplined Booker by issuing him a final written warning stating that any further incidents could put his employment with Lowe's in jeopardy. (Def.'s App. 195.)

Lowe's management later met with Buxton to inform her that they had resolved the matter. (Pl.'s App. 55.) At that meeting, Kerbow told Buxton she had learned that Cox was asking about Booker's work schedule and that Buxton would be held responsible for any of Cox's actions that caused a disruption at work. (Pl.'s Resp. 5.) Kerbow and Cardell relayed to Buxton that other Lowe's employees reported Buxton had previously talked about her piercings and tattoos, some of which were located on intimate parts of her body. (Pl.'s App. 73.) They reminded Buxton that such conversation was against company policy and that by participating in such discussion, co-workers could get the impress that Buxton was open to, or encouraged, other behavior deemed inappropriate by store policy. (Plaintiff's App. 74) After Buxton reported the incident to Lowe's management, Booker made no more advances toward Buxton. (Pl.'s App. 78.)

### D. Facts Surrounding Buxton's Termination

On December 19, Cox met Buxton outside Store #1780 for a personal visit. (Pl.'s App. at 83.) As he was leaving, Cox spotted Booker working a sidewalk sale and proceeded to get into an altercation with Booker and Keevin Herbert, another Lowe's employee. (Pl.'s App. 104.) Cardell

and Kerbow discussed the situation and, given that Buxton had been warned that she would be held accountable for her boyfriend's behavior at the store, decided to terminate Buxton's employment. (Pl.'s Resp. 6.)

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment will be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of material fact is only "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing the Court that there is no "genuine issue of material fact" and of identifying those portions of the record that show as much. *Celotex*, 477 U.S. at 323. However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). In addition, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing, the nonmoving party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent

summary judgment. *Id.* at 248–50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Also, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

**B. McDonnell Douglas Framework**

When a plaintiff does not produce direct evidence of discrimination, her case must be studied using the burden-shifting *McDonnell Douglas* analysis. Under that framework, a plaintiff may prove a prima facie case of a hostile work environment by producing evidence that shows "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a 'term, condition, or privilege' of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action." *McKinnis v. Crescent Guardian, Inc.*, No. 05-30728, 2006 WL 1880364, *2 (5th Cir. July 7, 2006) (citing *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999). To establish a prima facie case for retaliation, the

plaintiff must show "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (internal quotations omitted).

The prima facie case, once established, raises a presumption of discrimination which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Shackelford*, 190 F.3d at 404. This burden on the employer is only one of production, not persuasion, and involves no credibility assessments. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "If the defendant satisfies this burden, the plaintiff must prove that the proffered reasons are pretextual." *Shackelford*, 190 F.3d at 404. "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Id.*

## C. Sexual Harassment Claim

Buxton may establish a claim due to a Title VII violation by showing the Court that Lowe's was a "hostile work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993).

The parties in the instant case do not dispute that (1) Buxton is a member of a protected class, (2) Buxton was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, and (4) Booker's behavior affected the condition of Buxton's employment. Therefore, the essential question is whether the fifth element of the hostile work environment framework is fulfilled, i.e. whether "the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Williamson v. City of Houston*, 148 F.3d 462 (5th Cir. 1998). The Court

concludes below that the Plaintiff has failed to establish a fact issue as to this element.

Notice of the harassing behavior may be either constructive or actual to impute liability to an employer. *Id*. at 466. In this case, Lowe's received actual notice on November 27, 2004 when Buxton informed her manager, Watkins, that Booker had been sexually harassing her. Unbeknownst to Lowe's management, the harassment had occurred since July 2004.[4]

Once Lowe's received notice, it took appropriately swift action to remedy the problem and to prevent its reoccurrence. By reprimanding Booker and threatening to terminate his employment if such behavior was ever repeated, Lowe's took the appropriate action warranted by the situation. Though Lowe's did not take the most drastic action it could have (i.e., termination), it was not bound to fire Booker. *See Waymire v. Harris County, Tex.*, 86 F.3d 424, 429 (5th Cir. 1996) ( "Title VII does not require that an employer use the most serious sanction available to punish the offender, particularly where, as here this was the first documented offense."). Lowe's actions put an immediate stop to the harassment and proved to be the "prompt, remedial action" Title VII requires. Buxton therefore fails in establishing the fifth element in establish her prima facie case.

Furthermore, Lowe's presents evidence indicating that it is entitled to the *Faragher/Ellerth* affirmative defense, which shields employers liability for sexual harassment claims if (1) the employer exercised reasonable care to prevent and promptly remedy the harassment and (2) if the employee fails to use the preventative and remedial opportunities provided by the employer. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), *Burlington Industries, Inc. v. Ellerth*, 524

---

[4] At her deposition, Plaintiff testified that she made a few attempts to speak with Mr. Sigler before November 27, 2004, but was unable to do so because "he was either out of the office or . . . couldn't get to me then." (Def.'s App. 70.)

U.S. 742 (1998). Specifically, Lowes' points out that it fulfilled its responsibility to "prevent and promptly remedy" the situation, and Buxton failed to "use the preventative and remedial opportunities provided by the employer" by waiting more than four months to make her complaint. Buxton fails to respond with evidence creating a fact issue, and therefore, Summary Judgment is proper with respect to the availability of this defense, as well.

**D. Retaliation Claim**

Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a) (West 2000). Buxton has successfully established she "engaged in activity protected by Title VII" (i.e., filed a sexual harassment claim against a coworker) and that she suffered an "adverse employment action" when she was fired, thereby fulfilling the first two elements a prima facie retaliation claim. To establish the third element, Buxton must show that there is a "causal link" between the protected activity and the adverse employment action.

The Fifth Circuit has held that "close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993)). In the instant case, only one month separated the time at which Buxton filed her Title VII claim and when she was fired. While "the mere fact that some adverse action is taken after an employee engages in some protected

activity will not always be enough for a prima facie case," that fact, along with other factors, could be enough. *Swanson*, 110 F.3d at 1188 n.3.[5]

In the Plaintiff's case, this the timing of her firing, coupled with the fact that her employment was terminated and Booker's was not, is sufficient to establish her prima facie case. Because Plaintiff has established the prima facie case of retaliation, the burden shifts to Lowe's to prove that it had a legitimate, nonretaliatory purpose for its decision to fire Buxton. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Lowe's contends that its purpose for firing Plaintiff is that Lowe's had issued her a warning that if Cox came to the store premises and enters into an altercation with a Lowe's employee, Buxton would be held accountable for his actions. Lowe's explanation for the eventual termination is that the very scenario they warned Buxton about was played out, and that the decision to fire her stemmed from that unheeded warning, not her sexual discrimination claim.

The Court finds that Lowe's successfully carries its burden. Therefore, the burden shifts back to Buxton to show that Defendant's proffered reasons are really just pretext for retaliation. *Shackelford*, 190 F.3d at 404. To carry this burden, Buxton must show that she would not have been fired but for engaging in the protected activity (i.e. making the sexual harassment claim). *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001). This burden is more stringent than the "causal link" required to establish the prima facie case. *Id*. To survive summary judgment, Buxton must show a "conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford*, 190 F.3d at 404.

---

[5] In her response, she alleges that management treated her with hostility after she made her Title VII claim. (See Pl.'s Resp. 22.)

Here, Buxton is similarly situated to Booker inasmuch as they are both lower-level employees, and both are members of a protected class. Yet when there was an altercation outside the Lowe's store, where Cox and Booker mutually engaged in a shouting match, it was Buxton who paid the price, while Booker, who had been reprimanded for sexual harassment, kept his job. This disparate treatment is enough to create a jury question.  *Shackelford*, 190 F.3d at 404. Therefore, Buxton survives summary judgment on the retaliation claim.

### III. CONCLUSION

For the reasons stated above, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment; DENIES Plaintiff's Motion to Strike Evidence; and DENIES Plaintiff's Motion to Strike Defendant's Summary Judgment Reply. Plaintiff's sexual harassment claim is thus DISMISSED WITH PREJUDICE.

**It is so ordered.**

Signed this 9th day of August 2006.

*/s/ Jorge A. Solis*
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE